IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RODNEY JAMES REDWING,

    Petitioner,

v.

OREGON STATE PRISON,

    Respondent.

Case No. 6:17-cv-00796-HZ

OPINION AND ORDER

Thomas J. Hester
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

On January 21, 2005, Corrina Colvin set up a birthday party for Petitioner. As Petitioner was arriving to the party, a male acquaintance approached Colvin from behind and pulled her toward him by her belt loops. This enraged Petitioner, and he directed his anger at Colvin. As soon as the couple arrived at their home, Petitioner struck Colvin from behind when she was one step inside the home, knocking her to the floor. Trial Transcript, p. 134. When she tried to stand up, Petitioner knocked her down again. He then began ripping off Colvin's shirt and bra.[1] Colvin tried to get away to escape upstairs and put more clothes on, but Petitioner repeatedly knocked her down. *Id* at 139.

Petitioner left to go into the garage, at which time Colvin moved upstairs and put on another bra and shirt. She was not able to contact the police because Petitioner had hidden her phone as well as her car keys. *Id* at 139. Petitioner returned to the house, found Colvin upstairs and hit her in the back of the head with such force that she "flew over the bed and landed in between the wall and the bed on the other side." *Id* at 140. He again

---

[1] Colvin had "more than a simple dislike of being naked" which stemmed from "issues from childhood problems" which she had disclosed to Petitioner. Trial Transcript, p. 138.

2 - OPINION AND ORDER

ripped her shirt and bra from her, and then attempted to rupture her breast implants while telling her "You're a fake." *Id* at 142.

Petitioner left the bedroom, and Colvin once again put on more clothes and lay very still on the bed in the hopes that Petitioner would stop hurting her. Petitioner returned with two butcher knives, and he cut off her bra and shirt before throwing the knives aside and telling Colvin that he loved her.

At some point, Colvin was able to get out the front door of the house. She made it "probably seven feet" out the front door but Petitioner "came out and picked me up and carried me back in." *Id* at 143-44. At another point, Petitioner grabbed her by her hair and dragged her up the stairs of the home, leaving her with bald spots on the back of her head. *Id* at 147.

After Petitioner had calmed down, Colvin went downstairs, consumed three bottles of pills in an attempt to commit suicide, and asked Petitioner to tell her children that she loved them. She later changed her mind about taking her own life, and asked Petitioner to drive her to the hospital but he was unable to find the keys to any of their three cars, could not find either of their phones, and would not allow Colvin to leave the house. *Id* at 149-50. Petitioner ultimately located the keys to his van and took Colvin to the hospital for treatment.

The Marion County Grand Jury indicted Petitioner on two counts of Kidnapping in the First Degree, two counts of Assault in the Fourth Degree, and one count each of Coercion, Unlawful Use of a Weapon, Robbery in the Third Degree, and Harassment. Respondent's Exhibit 102. A jury convicted Petitioner of all

charges, and the trial court sentenced him to a prison sentence totaling 186 months.

Petitioner took a direct appeal where the Oregon Court of Appeals found that the trial court failed to merge the Kidnapping I convictions, remanded the case for resentencing on this issue, but otherwise affirmed the trial court's decision.[2] *State v. Redwing*, 222 Or. App. 200, 192 P.3d 856 (2009). Petitioner did not seek further review by the Oregon Supreme Court.

Petitioner next filed for post-conviction relief ("PCR") in Marion County where he alleged that trial counsel was ineffective for failing to challenge the kidnapping charges as unsupported by state law. Respondent's Exhibit 110. The PCR Court denied relief on the PCR Petition, the Oregon Court of Appeals affirmed that decision without opinion, and the Oregon Supreme Court denied review. *Redwing v. Premo*, 277 Or. App. 783, 376 P.3d 307, *rev. denied*, 360 Or. 568, 385 P.3d 81 (2016).

Petitioner filed his federal Petition for Writ of Habeas Corpus on May 22, 2017 and raises the following claims:

> **Ground One:** Trial counsel failed to alert the trial court to, and preserve for appeal, a favorable Oregon Supreme Court case decided shortly before his trial; and
>
> **Ground Two:** Petitioner's conviction resulted from an unlawful search and seizure where Officer Rhine never possessed a search warrant.

Respondent asks the Court to deny relief on these claims because: (1) the PCR Court's decision denying relief on Ground

---

[2] Petitioner's total term of imprisonment remained 186 months after his resentencing. *See* Respondent's Exhibit 109, p. 3.

One was not unreasonable; and (2) Ground Two fails to state a cognizable claim, is procedurally defaulted, and is unargued. Where the Ground Two search and seizure issue is not a proper basis for federal habeas corpus relief, and where Petitioner procedurally defaulted the issue by not fairly presenting it to the Oregon's state courts, the Court denies the claim without further discussion. *See Stone v. Powell*, 428 U.S. 465, 481-82 (1979) (where litigant had opportunity to raise search and seizure claim in state court, federal habeas relief is unavailable); *Rose v. Lundy*, 455 U.S. 509, 519 (1982) (requiring exhaustion of state court remedies).

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's]

cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## II. Ground One: Ineffective Assistance of Counsel

Petitioner alleges that his trial attorney rendered ineffective assistance when he failed to move for a judgment of acquittal on the kidnapping charges where the movement of the victim was merely incidental to the assault. Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective

standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In the context of a motion for judgment of acquittal that Petitioner claims should have been made, he must establish that there is a reasonable probability that such a motion would have been successful. *See Styers v. Schriro*, 547 F.3d 1026, 1030 (9th Cir. 2008). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

Under Oregon law, a person is guilty of Kidnapping II if he takes the victim from one place to another with the intent to interfere substantially with the victim's personal liberty. ORS § 163.225. Kidnapping I can be satisfied where the person commits Kidnapping II with the purpose of terrorizing or causing physical injury to the victim. ORS 163.235(c)&(d).[3] Approximately eight months prior to Petitioner's trial, the Oregon Supreme Court decided *State v. Wolleat,* 338 Or. 469 (2005), wherein it shed

---
[3] The jury convicted Petitioner under both of these theories.

light on the kind of victim movement required to justify a kidnapping conviction in Oregon.

In *Wolleat,* the assailant grabbed the victim by her hair and dragged her from her bedroom into the living room of the same home, a distance estimated to be between 15-20 feet, where he assaulted her until she escaped. The Oregon Supreme Court concluded that where Oregon law requires that a defendant intend to interfere "substantially" with a victim's personal liberty, the movement of the victim in *Wolleat* was insufficient as a matter of law to support the intent element associated with kidnapping. 338 Or. at 478.

In his PCR proceeding, Petitioner argued that there was no evidence to show that he intended to substantially interfere with Colvin's liberty, thus counsel should have moved for a judgment of acquittal. The PCR Court disagreed, and found that "[t]here was sufficient evidence that pet[itioner] carried the [victim] back into the house when she tried to escape for [the] court to deny judgment of acquittal." Respondent's Exhibit 135, p. 3.

Petitioner takes issue with the PCR Court's decision and points out that Colvin only exited the house by seven feet before he carried her back inside the house, whereas *Wolleat* involved the greater distance of 15-20 feet yet the Oregon Supreme Court still did not find this to be a "substantial distance" so as to support a kidnapping charge. He contends that given the insignificant movement at issue in his case, the movement was incidental to the assault such that a motion for judgment of

acquittal in the wake of the *Wolleat* decision would have been successful.

The PCR Court applied the facts of Petitioner's case to its interpretation of state law. Federal habeas courts may not revisit such a determination and conclude that a state-court misapplied state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). However, even if it were the province of this Court to second-guess the PCR Court's application of *Wolleat* to Petitioner's case, the PCR Court did not rule that seven feet of movement amounts to a "substantial distance" under Oregon law. Instead, the PCR Court focused on the change of location and found (without reference to distance) that Petitioner carried the victim from an area out in the open in front of the home (and in view of the street and neighboring homes) back into the private residence after she had fled the dwelling. Respondent's Exhibit 135, p. 3; Respondent's Exhibit 131, p. 8. This, and not the movement of seven feet as a substantial distance, appears to be the basis for the PCR Court's finding that a motion for judgment of acquittal would not have been well-taken.

Moreover, even assuming the PCR Court misapplied state law regarding the movement of Colvin, the movement was not the only evidence of Petitioner's intent to interfere with her liberty. Petitioner not only physically moved Colvin back into the home and prevented her from leaving, but also took her keys and her cell phone thereby demonstrating his intent to substantially

9 - OPINION AND ORDER

interfere with her liberty in a way that was not merely incidental to the assault. As the Oregon Supreme Court explained in *State v. Mejia,* 348 Or. 1, 10 (2010):

> *Wolleat* and [*State v. Zweigart,* 344 Or. 619, 188 P.3d 242 (2008),] involved situations in which the actual physical movement of the victim was the *only* evidence available to prove whether the defendants intended to kidnap the victims by substantially interfering with their personal liberty. Those cases demonstrate that, when the only evidence of a defendant's intent is physical movement of the victim, a reasonable juror may only infer intent to interfere substantially with a victim's freedom of movement if there is 'evidence that the defendant moved the victim a substantial distance.' *Zweigart,* 344 Or. At 636.

*Mejia,* 348 Or. at 10 (emphasis in original).

Accordingly, even assuming the PCR Court had focused only on the distance of Colvin's involuntary movement, and further assuming this Court could find such a decision erroneous, a motion for judgment for acquittal would not have succeeded at trial because Petitioner's intent to substantially interfere with Colvin's liberty was illustrated beyond movement when he hid Colvin's keys and cell phone, actions which were not simply incidental to the assault. Petitioner therefore suffered no prejudice from any failure of counsel to move for a judgment of acquittal. At a minimum, and in light of Oregon's somewhat nebulous "substantial interference" test associated with its kidnapping statutes, this Court cannot conclude that the PCR Court's decision to deny relief on Petitioner's Ground One claim was so erroneous that no fairminded jurist could agree with it.

**CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. Should Petitioner appeal this decision, the Court issues a Certificate of Appealability as to his Ground One claim only.

IT IS SO ORDERED.

DATED this 21 day of December, 2018.

*Marco Hernandez*
Marco A. Hernandez
United States District Judge